IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
KEVIN GALINDO,

                    Plaintiff,


VS.                        Case No. 4:24-CV-01504



QUANTIX SCS, LLC, ET AL.,

                    Defendants.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

TRANSCRIPT OF MOTION HEARING
HEARD BEFORE THE HONORABLE DREW TIPTON
UNITED STATES DISTRICT JUDGE

June 5, 2025

<u>APPEARANCES:</u>

FOR THE PLAINTIFF:   Lauren M. Horne
                     DeSouza Injury Lawyers
                     4047 Naco Perrin
                     Suite 100
                     San Antonio, TX 78217



                     Peter Michael Kelly
                     Kelly Watkins McPheeters, LLP
                     1302 Waugh Drive
                     Suite 596
                     Houston, TX 77019

FOR THE DEFENDANT:   Stephanie J Roark
                     Rawson Law, PLLC
                     4516 Lovers Lane
                     Suite 172
                     Dallas, TX 75225

**OFFICIAL TRANSCRIPT**
Page 1

Court Reporter:          Nichelle N. Drake, RMR, CRR
                         515 Rusk Street
                         Suite 8004
                         Houston, Texas 77002


    Proceedings recorded by mechanical stenography,
transcript produced via computer

**P R O C E E D I N G S**

(Call to order of the court.)

THE COURT:  Okay.  Let's take appearances of counsel beginning with Plaintiff, please.

MS. HORNE:  Good afternoon, Your Honor, this is Lauren Horne here with co-counsel, Peter Kelly, on behalf of Plaintiffs.

THE COURT:  Okay.

MS. ROARK:  Stephanie Roark on behalf of Defendants Mid-States and Quantix.

THE COURT:  Thank you, both.  Welcome.

You're going to have to get close to the microphone when you start talking for real.  The acoustics in here for whatever reason are not good.

We're here on Defendant's motion for summary judgment.

MS. ROARK:  Yes, Your Honor.

THE COURT:  Anything you want to add other than what's in your papers?

MS. ROARK:  Just briefly.

THE COURT:  This microphone up here in the center of the bench, I think, works about the best.

MS. ROARK:  This one right here?

THE COURT:  That's it.

MS. ROARK:  Is that okay, Your Honor?

THE COURT:  That's good.

MS. ROARK:  Your Honor, the facts of this case are simple and straightforward.  The decedent, Mr. Palma, was intoxicated with a blood-alcohol content of 0.204 on the morning of the accident.  He veered out of his lane, crossed the center line, and hit Mr. Whalon's tractor tailor head-on.  He took no evasive action and unfortunately died at the scene.

Plaintiff did not retain an accident reconstruction expert or any other expert to dispute the cause of the crash.  The crash report, the police investigation records, the deposition testimony of Trooper Etzler, and the deposition testimony of Mr. Whalon all confirm that Mr. Palma crossing the center line in an intoxicated state was the cause of this crash.  Trooper Etzler, a level 5 trooper with 20 years of experience, also testified repeatedly that Mr. Whalon did nothing wrong and was in no way at fault for the accident.

In response to our motion for summary judgment, no evidence was produced to suggest that Mr. Whalon was negligent with respect to the crash or that anything he did proximately caused the crash. There's no evidence that he was speeding, no evidence that he was the one that, in fact, crossed the center

line.   There's simply no evidence that the cause of the crash was anything other than Mr. Palma.

In response to our summary judgment motion, there was an attempt to question the credibility of Trooper Etzler by citing to his deposition testimony about Mr. Palma's BAC.  He acknowledged that he is not a toxicologist and is not qualified to perform the testing that was performed on Mr. Palma's blood, but as I hope our reply clarified, that is misleading.  Trooper Etzler also testified that he followed the appropriate protocol and that the BAC was obtained through qualified personnel with the Texas DPS Crime Laboratory.

Beyond conclusory allegations regarding Mr. Whalon, Plaintiff also argues that the lights on the 18-wheeler may have been inoperable, but there is no evidence to support this.

Plaintiff cites to a post-crash inspection of the tractor-trailer, which simply states that officers were unable to get power to the trailer lights as a result of damage to the trailer from the crash.  There is absolutely no suggestion that the trailer lights were not working at the time of the crash, much less that the tractor headlights were not working at the time of the crash, and there is

further no evidence to suggest that any issues with the headlights on the tractor or any issues with the trailer lights were a proximate cause of the crash. The same is true for reference to a damaged hose. There's no evidence that this had anything to do with the crash or anything to do with the proximate cause of the crash.

Your Honor, all of Plaintiff's claims require underlying proof that Mr. Whalon somehow was at fault for this crash and that his negligence was a proximate cause of the crash. Because no evidence has been produced to establish negligence on the part of Mr. Whalon, the remainder of Plaintiff's claims for negligent hiring, retention, negligent entrustment automatically fail.

I'm happy to address independent reasons that those claims fail as a matter of law.

THE COURT: That's sufficient.

Let me hear from the other side.

MS. ROARK: Okay.

THE COURT: Come to the mic, please.

MS. HORNE: Thank you, Your Honor.

May it please the Court.

THE COURT: Counsel.

MS. HORNE: And can you hear me okay, Your

Honor?

THE COURT:  A little bit higher.

There you go.  That's good.

MS. HORNE:  Thank you.  I appreciate it.

If you cannot hear me, please let me know and I'll try to speak louder.

I appreciate it.

As the Court knows, it's really Defendant's burden here on summary judgment.  They bear the burden to show that there's no genuine issue of material fact.  And we're not here today to decide the credibility of the evidence or the admissibility of the evidence.

THE COURT:  Let's talk about the disputed facts.

MS. HORNE:  It's whether or not there are -- their evidence shows that there are disputed facts, and I think that we can outline that there are disputed facts, and I think that we can outline that their disputed facts should be put to the jury.  The jury should decide the question of Quantix's, Mid-State's and thereby Whalon's negligence, especially when the Fifth Circuit has explained in numerous cases that it is an extraordinary remedy to grant summary judgment in a negligence case because

negligent cases are so fact intensive.

So in looking at the facts, as the Court is aware under 45 CFR 391, there are Federal Motor Carrier regulations that Quantix, as a motor carrier, must follow and Mr. Whalon, as a driver, has to be qualified in order to be able to drive.  And that is in dispute.  And we will show the evidence disputes whether or not Mr. Whalon was properly qualified, whether he was properly hired, whether he was properly trained to drive the tractor-trailer on April 9, 2024, whether his significant accident history should have kept him from being on the road that date, whether he performed a proper pre-trip inspection, going to whether or not the lights were working, whether or not the damaged hose contributed somehow to the accident, whether the point where the point of impact occurred is also in dispute, and also whether or not he kept proper lookout or was distracted or failed to take proper evasive action.

Before I start outlining those facts, as I may, I'd like to point out that no toxicologist has been retained by Defendants to prove up the blood-alcohol content.  There's also no pre-trip inspection report that has been provided for the tractor-trailer that was involved in the accident.

THE COURT:  Was it requested?

MS. HORNE:  Yes, we in discovery requested those documents, Your Honor.

THE COURT:  What was the reason for the objection then?

MS. HORNE:  I believe we got objections to majority of our discovery.

We also do not have the black box data recorder to download from the tractor-trailer either. I believe there was an agreement to produce, but we still have yet to receive that.

Now, the evidence --

THE COURT:  There's really no evidence that Mr. Whalon was negligent or that any negligence by him caused the accident, right?

MS. HORNE:  Well, Your Honor, we actually disagree with that respectfully.  We believe that based on Mr. Whalon's testimony, there is -- there is evidence going to the fact that, you know -- creating a fact dispute.  Mr. Whalon testified, you know, he wasn't familiar with the Texas commercial driver's handbook.  He wasn't familiar with whether or not Quantix had ever given him the Federal Carrier rules and regulations.  He did not recall the number of moving violations he received.  As stated, he was in

at least 11 incidents prior to this one that we're here for today, but he also testified that he was supposed to be at the Formosa Gate 2 on the scale at 3:00 a.m., but he was running behind, and that's noted on page 127 of his testimony, which is page 33 of 111 of Exhibit B or Document 30-2.

He also does not know how long his pre-trip inspection took and agrees there should be a record of it somewhere.  He also talks about the fact that as he was approaching FM 1593 on 35 he was already slowing to make a turn, and that's on page 123 of his deposition or page 76 of Exhibit B.  He does not recall the day of the week on which the accident occurred.  He does not recall the exact time of the accident.  Again, he testified on the same page that he was supposed to be there at 3:00 a.m., but he was running behind.

As he was slowing down and approaching to make a turn at the light, he didn't check his mirrors.  He doesn't recall if he had engaged a turn signal.  He doesn't know when he first realized there was a vehicle to his left, which would have been my client, Mr. Palma's vehicle, or how fast Mr. Palma's vehicle was going.  That's on page 187, line 11, through 188, line 1.

And then, you know, we showed him some of the accident photographs at his deposition, and in looking at the accident photographs, he couldn't tell me how many inches or feet or how close his truck was to the center line.  That's on page 172.  He also agreed that at least one photograph showed some of the debris from the accident in the northbound lane, which would have been Mr. Palma's lane.  That's on page 174, lines 12 through 19.

So I believe there's evidence on both sides. I think that there is in dispute where exactly the impact occurred.  I think it's in dispute whether or not Mr. Whalon was keeping a proper lookout based on the fact that there's so much he didn't recall.  He didn't know how soon before the accident he had seen Mr. Palma's vehicle.  He didn't recall how fast Mr. Palma was going.  He was already braking as he was coming up to the light, so we can't say that's in response to this accident.

So I think that it at least should go to a jury whether or not Mr. Whalon was negligent and whether he took proper evasive action.

THE COURT:  Let me hear what Defendant is going to say in response.  The argument that Quantix has a history of putting drivers on the road with bad

lights is supported by records at -- from the Federal Motor Carrier Safety Administration that are unauthenticated and hearsay, I think.  The records also contain an exclusive disclaimer that they cannot be used to draw conclusions about the motor carrier safety operations.

Defendant claims there's no competent summary judgment having to suggest the lights were not working.  The fact that they were not working in post-crash inspection does not indicate whether they were working together before, you know, the accident. Whalon testified that the trailer lights and headlights were working during the pre-trip inspection and other -- you cite to three exhibits, but none of them seem to create a dispute of material fact on the issue of negligence.

And I take your point that summary judgment is normally inappropriate in negligence cases because they require the trier to pass upon the reasonableness of the defendant's conduct, but Fifth Circuit has said in the *Lindsey v. Sears Roebuck*, that's true only where Plaintiff has produced with respect to each element of its cause of action competent proof that will withstand summary judgment.

What is your best point in whether there is a

genuine dispute of material fact and what's your evidence of support?

MS. HORNE:  I think the best point is, when we go to the actual facts of the accident -- and I'm not talking about just the lighting issue, those issues, but in terms of the timing of the accident, he admitted he was running late and that's multiple places in his testimony, in Exhibit B.  He's also not only admitted he's running late, but again, he cannot tell me how long he had seen the other vehicle, what he did in response to the other vehicle.  He cannot state, you know, did he have his signal on or did not have his signal on.

THE COURT:  But Mr. Palma -- the wreck occurred only in the lane Mr. Whalon was properly in, didn't it?

MS. HORNE:  Well, we believe that that's in dispute.  That's what I meant by pointing to Whalon's testimony where he agreed that he cannot measure how far his truck was from the center lane, also to the extent that there is some debris from the accident that is in the northbound lane, in Mr. Palma's lane.

And you also, you know -- we have to keep in mind here that Whalon is not named as an individual driver, and we believe that under the Federal Motor

Carrier rules and regulations and based on Whalon's testimony, it shows that Whalon perhaps was not qualified to be put on the road that night, and that's also the question and negligence that should go to the jury.

THE COURT:  What's the best evidence of unqualification (sic)?

MS. HORNE:  A lack of full background under, you know, Section 391.  They have to show that a driver is qualified and also have to take into account the number of accidents that that driver has had in the three years prior.

And, again, we know here that throughout his employment with Quantix he had at least 10 incidents in a commercial motor vehicle.  He also could not tell me what they did for a background check.  He couldn't tell me how many moving violations he had. He didn't know how many moving violations in a commercial motor vehicle.  He also doesn't know if the company had looked at his prior DWI or looked at his accident history.

So therefore, we believe, again, we don't have to -- it's not our burden to prove today, for today's purposes, the admissibility of all of this, but to show that the evidence at least shows there are

genuine issues of material fact and that this should go to a jury.

THE COURT:  Thank you very much.

MS. HORNE:  Thank you, Your Honor.

THE COURT:  You want a turn back?

MS. ROARK:  Yes, Your Honor.

Just briefly, Your Honor, the fact that Mr. Whalon could not tell counsel during his deposition when he was shown a photograph over Zoom exactly how far in terms of distance his truck was from the center line has nothing to do with the cause of the accident.  The trooper testified unequivocally that the accident occurred solely in Whalon's lane, not in the lane of Palma.

I believe counsel referenced that there was some debris in Mr. Palma's lane of travel, which is true.  It is debris from the accident that has come off the vehicles and ended in the lane adjacent to Mr. Whalon's lane.  There has been no evidence still as we sit here today produced with respect to Mr. Whalon doing anything on that night that caused the accident.

There was -- counsel mentioned that Mr. Whalon testified that he was running late, which is accurate, and he testified in three different places,

all of which is attached to the various briefing filed with motions for summary judgment, that if he was running late, he would simply call Formosa and let them know he was running late, which he did in this case, and that's on pages 127 of his deposition. He clarified it again on page 130 of his deposition. And, again, on pages 150 and 151 of his deposition, that "If I was running late, I would just call Formosa and let them know and there was no issue there."

Again, Your Honor, the fact that he's been involved in other motor vehicle accidents during his 24-year career as a truck driver has nothing to do with the cause of this accident, which is -- they have to necessarily prove before they get to any negligent hiring or negligent training or retention claims, which again I'm happy to address -- but Your Honor, there has still been no evidence of any underlying fault on the part of Mr. Whalon as it relates to the cause of this accident.

And Mr. Whalon's DQ file was produced, his personnel file was produced.  In fact, each of the crash reports related to these other accidents that they referenced was produced to counsel, and they had these documents at his deposition.  And while they

cited to his deposition testimony where they're asking him questions about those other accidents, they didn't attach those crash reports in response to the motion for summary judgment because nearly every single one of those crash reports would show the Court that he was, in fact, not at fault for those accidents.  He testified to one or two on site accidents where he backed into a pole.  It was a single vehicle accident involving his tractor.  He admitted to fault for those accidents during his 24-year career, but none of the other accidents that counsel is referencing have been attached as summary judgment evidence.  And again, they -- they are not substantially similar to the accident we're here to talk about and they have nothing to do with the underlying cause of the subject accident.

THE COURT:  What documents have you withheld?  What documents have you withheld?

MS. ROARK:  Your Honor, I'm not aware of any documents we withheld.  We produced his entire personnel file, which again includes application for employment.  If they had an issue with his qualifications when he was hired, they didn't produce in response to summary judgment any evidence showing that they had an issue with his application or the

background check performed or anything of that nature.

THE COURT:  Whose obligation is it in a case like this?  Do you have to prove he was qualified, or does the defendant have to come forth with the evidence that he was not qualified?

MS. ROARK:  Well, Your Honor, in our motion for summary judgment, we have asserted that there is no evidence that he wasn't qualified.  He had a valid CDL.  He had been a truck driver for 24 years, and, again, you don't get to any negligent retention or hiring claims until you first establish underlying fault or negligence on the part of Mr. Whalon for the subject crash, which is not present.

THE COURT:  Was there a rule -- never mind.

MS. ROARK:  If I may, I would like to point out with respect to the condition of the tractor-trailer, the plaintiff retained an expert to do an inspection on the tractor-trailer.  The tractor-trailer was inspected by their expert, and no expert report was ever produced alleging any deficiencies in the tractor-trailer that would have caused the crash.  And so I'm not sure what the issue is with bringing up post-crash issues with the trailer lights.

And it's not that the trailer lights were not working following the crash.  It's that the officer noted in his report they couldn't get power to the trailer to test the lights.  There's no evidence that any of the lights weren't working, and if they weren't, in fact, working, I suspect they would have designated their expert who inspected the vehicle to address those concerns.

THE COURT:  Anything else?

MS. ROARK:  That's all, Your Honor.  Thank you.

THE COURT:  Anything else?

MS. HORNE:  Yes, Your Honor, if I may very briefly, again, Your Honor, I would just like to point out that there are still facts in dispute, and while they say that they have provided a driver qualification file, the reason we asked extensively about the background was to try to determine what exactly was done, as that DQ file did not have what we felt it should have.

Furthermore, we --

THE COURT:  Did you make inquiry of Defendants?

MS. HORNE:  Your Honor, we did and we asked for the download from the vehicle and we still have

not received the download from the tractor-trailer. And that's evidence --

THE COURT:  I'm not sure I understand what you mean by download.

MS. HORNE:  So the tractor-trailer has data that's recorded, such as speed, such as GPS points, where it's located during impact, how quick it's going before impact, the tractor-trailer being the 18-wheeler that Mr. Whalon was driving.  We have asked for those.

And then we have sent in e-mails that we intended to file a motion to dismiss to try to move these claims to state court.  We also asked in there, and by the way, when can we address the other issues, when are you going to supplement discovery, and admittedly, I perhaps should have filed a motion to compel, but bottom line is, as of today, we don't have that download from the 18-wheeler.  And that's evidence that is missing, and that is directly relevant to the negligence of Mr. Whalon.

THE COURT:  I'm not sure this is on my periscope.

Let me get Defendant's response.

MS. ROARK:  Yes, Your Honor.

Mr. Whalon's driver logs have been produced,

which show the speed at what -- where exactly he was at at all points along this particular evening of the accident.  So I'm not sure what additional data they are needing.

The GPS records are embedded in the driver logs.  They're all electronic logs.  Those were all produced.  They went through with Mr. Whalon his activities of the day based on his logs in detail during his deposition.

The black box data from the tractor-trailer could not be downloaded by either of the parties' experts because it has to be sent off to a certain company in order to do that.  It has been preserved.

Counsel, we've never agreed on costs for sending it off to be downloaded or anything of that nature, but the -- if the issue is Mr. Whalon's speed and where he was that day, all of that information is contained in the electronic driver logs, which were produced prior to his deposition and which were discussed at length with Mr. Whalon at his deposition.

THE COURT:  Thank you.

The Court will take a short break.  No one needs to rise.

(Recess taken.)

(In open court.)

THE COURT:  This is a tragic case and I have great sympathy for both families.

I do not see a continued dispute as to material of fact.  I don't think Mr. Whalon has been shown to have been negligent in any particular way, so I don't think there is any basis to inquire as to his history or negligent hiring or anything like that.

I'm going to grant the motion.  I'm very sorry.

*  *  *  *

(WHEREUPON, the proceedings were adjourned.)

*  *  *  *

REPORTER'S CERTIFICATE

I, Nichelle N. Drake, RMR, CRR, Official Court Reporter, United States District Court, Southern District of Texas, do hereby certify that the foregoing is a true and correct transcript, to the best of my ability and understanding, from the record of the proceedings in the above-entitled and numbered matter.

                         /s/ Nichelle N. Drake
                      Official Court Reporter